## Nicola Neroni, Appellee v. Inland Steel Company, Appellant.

### Gen. No. 18,024.

1. MASTER AND SERVANT—*rolling mills*. While plaintiff, an employe in defendant's rolling mill, was going along what was ordinarily used as a passageway, a red hot angle iron came from a roller and struck the edge of an overlapping plate constituting part of the floor, and curled back around his legs, and when he jumped to avoid this, he landed in front of a trough, from which a hot angle iron came out, striking and burning his right leg. *Held*, that the plaintiff did not assume the risk, nor was he guilty of contributory negligence as a matter of law, and there is sufficient basis in the evidence for the jury to conclude that his conduct with reference to the path he pursued and when he jumped did not constitute contributory negligence, that he was on a passageway and that he did not assume the risk of the unusual and extraordinary occurrence of the red hot iron running across the passageway.

2. LIMITATIONS—*amended declaration*. Where the gist of the action is the same in the original and an amended declaration, the amendment does not state a new cause of action vulnerable to the plea of the statute of limitations.

Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed March 13, 1913.

JOHN A. BLOOMINGSTON, for appellant.

STEDMAN & SOELKE, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an appeal from a judgment for $1,500 for personal injuries received by Nicola Neroni, hereinafter called plaintiff, while in the employ of the Inland Steel Company, hereinafter called defendant. The accident happened on August 7, 1906, in the rolling mill of defendant located at Chicago Heights. This

plant is about 400 feet long, running north and south, and 200 feet wide. About midway on the east side of the building there are doors, which are usually open. There is a battery of rollers running east and west about half way across west of the east line of the building. Bars of red hot angle iron are pushed or run through these rollers in a northerly direction across what is called the "rolling floor," up to a passageway on the north end of the "rolling floor." This "rolling floor" is composed of pieces of plates of iron or steel lapping with the ends and frequently projecting one over the other, which condition had prevailed for some time previous to the date of the accident. This "rolling floor" runs a distance from the rollers north about 50 feet, at which place there are "cooling beds," which are about three feet wide and ninety feet long, running north and south. The so-called passageway lies between the "cooling beds" and the end of the troughs or channels into which the iron runs as it comes from the rollers. There are no sanitary arrangements in the center of the building, neither is there any method of furnishing drinking water to employees in the building. The angle iron passing through the rollers is about 1/16 of an inch in thickness, and men are employed to take the rails as they come through the rollers and carry them to the next rollers. This process is repeated until the iron is pressed into its final shape. Near the trough are stationed men with tongs to take the iron from the trough to the "cooling beds." Outside the side door is a drinking-water faucet, used by the men. In reaching this faucet, or in leaving the building for any purpose, the men walk to the passageway in front of the rollers and east to the door. Plaintiff was employed 26 hours before the accident happened, to work in the middle of the shop. The first night and the following day he procured drinking water from the furnace room at the south end of the factory. This water is described as "warm and no good." On the day of the

accident, when going to the furnace room for a drink, the foreman motioned to him to go east, indicating the open doorway. Plaintiff walked back to his place of employment, worked a few minutes, then went south to the passageway above described, thence east along the passageway towards the door. While doing this a red hot angle iron came from one of the rollers and ran across the passageway in front of plaintiff and struck the edge of a plate constituting part of the floor, curling back and around plaintiff's legs. To avoid this he jumped, landing in front of one of the troughs, from which a hot angle iron came out, striking him and burning his right leg from the knee to the ankle joint, extending to the bone.

This case has been tried four times. Defendant's counsel earnestly urges upon this court that the evidence does not sustain the verdict, and this claim seems to be based upon the apparent discrepancies in the testimony of the witnesses upon the different trials. Plaintiff claims that whatever discrepancies may appear were occasioned by the fact that many interpreters were used in the first and second trials on account of the different Italian idioms spoken by the witnesses, but that on the third and fourth trials competent interpreters were used. As this point goes to the credibility of the witnesses, and the alleged discrepancies were brought to the attention of the jury, together with whatever explanation thereof which might be made, we are of the opinion that it was peculiarly for the jury to pass upon, and that this court would not be justified in reaching a different conclusion from that indicated by the jury in its verdict.

The question of assumed risk is also ordinarily one for the jury to determine. Plaintiff assumed the risk of the ordinary and obvious dangers incident to his employment, but the evidence before the jury tended to show that the crossing of the passageway by the hot angle rail was not an ordinary occurrence. While counsel for defendant argues that this is not a pas-

Neroni v. Inland Steel Company, 178 Ill. App. 246.

sageway, yet from the evidence showing the usual and ordinary use made of this part of the floor, and considering that it was apparently the only means by which one could cross from the west to the east side of the building to the door, without jumping over the troughs or "cooling beds," there was sufficient basis for the jury to conclude that it was a passageway. We cannot say that plaintiff assumed the risk of the unusual and extraordinary occurrence of the red hot iron running across the passageway, and must leave the conclusion of the jury upon this point undisturbed.

There is no merit in defendant's claim that there is a variance between the allegations of the declaration and the proof. The evidence did not show that the bar in question went clear across the passageway into the hot beds and there struck an obstruction, but rather that the obstruction which it hit was in the passageway and that the obstruction was the overlapping edge of one of the floor plates.

Neither is there any merit in the claim that the court erred in sustaining the demurrer of the plaintiff to defendant's plea of the statute of limitations, for the amendment did not state a new cause of action. The gist of the action was the same both in the original declaration and in the amendment. We see no reason to dissent from the conclusion of the jury as to whether or not plaintiff was guilty of contributory negligence. We cannot say that he was so guilty as a matter of law. His conduct at the time, both with reference to the path he pursued in going towards the door and when he jumped to avoid the bar, was a proper subject for the consideration of the jury as to whether this constituted contributory negligence on his part.

We have given consideration to the point urged concerning the admission and rejection of testimony and the giving and refusing of instructions, but are of the opinion that no reversible error was committed in these.

Finding no sufficient reason for concluding that the verdict of the jury upon the controverted points is manifestly against the weight of the evidence, and there being no reversible errors upon the trial, the judgment is affirmed.

*Affirmed.*